KASTEIN v. ROTHSCHILD et al.

(Supreme Court, Appellate Term. June 5, 1908.)

CHATTEL MORTGAGES—REPLEVIN—EVIDENCE—SUFFICIENCY.

In replevin for horses alleged to belong to plaintiff under a bill of sale, but which were taken by defendant under a mortgage given by the person making sale to plaintiff, evidence examined, and *held* insufficient to show change of possession under the bill of sale, so as to defeat the rights of the mortgagee under his mortgage.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Elias Kastein against William Rothschild and others. From a judgment for plaintiff, defendants appeal. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and DAYTON and GERARD, J.

Samuel Hoffman, for appellants.
Jacob Silverstein, for respondent.

PER CURIAM. Action in replevin to recover four horses, of the value of $500. Defendant Mezger was a city marshal, who did not appear. The stenographer's minutes state the appearances at the trial:

"For the plaintiff, Jacob Silverstein, Esq.; for the defendants (Rothschild), Samuel Hoffman, Esq."

The jury rendered a verdict for the plaintiff, and judgment was entered against John F. Mezger, Max Rothschild, and David Rothschild, copartners doing business as J. Rothschild & Sons, for possession of the horses or their value, fixed at the time of the trial at $500, and costs, from which "the defendants Rothschild" appeal.

Mrs. Rachel Kastein testified that Samuel Pomeranz, her brother-in-law, on December 15, 1906, by bill of sale (made to Theresa "Kastin") transferred to her his business on Water street, including, among other chattels, the horses in question. When asked what she did when she got this paper, her reply was: "When he gave me the paper, I wanted my money." She did not put her name over the stable. Pomeranz paid the rent. She did not know the names of the

horses that her son was suing for.  Plaintiff (22 years old) testified that he was working for Pomeranz prior to December, 1906, and until August, 1907, at $16 per week.  Pomeranz was the landlord, paid the feed bills, but paid 50 cents per day for the use of the horses for five or six months.  About November, 1907, his mother sold the horses, and he bought them.  November 21, 1907, Mezger, the marshal, and William Rothschild took these five horses from 238 Cherry street, where plaintiff kept them.  He told Rothschild they were his property.  Rothschild replied that he had a mortgage on them.  After the bill of sale was made, the business continued to be conducted in the name of Pomeranz, who paid all the bills, and paid witness' salary "to look out for our horses" and "working for his business."  He owed witness' mother some money.  After December, 1906, six horses came to that stable from Rothschild, two of which Pomeranz sold.  Two of them died.  Sol. Cohen, a city marshal, testified that on November 12, 1907, for Robert Lax he took possession of 14 horses at 610 Water street to enforce the bill of sale and sold them to plaintiff at auction after 14 days' advertising.  Money was given to Mr. Lax, but he does not remember how much (Lax is his assistant).  Pomeranz was called by defendant, and testified that he always owed Rothschild money.  Witness gave J. Rothschild & Sons a chattel mortgage April 27, 1907, for $1,459.60 upon seven horses at 610 Water street, payable on demand.  When he made the bill of sale (December, 1906) he owed Mrs. Kastein very little money.  It was given to protect him.  He did not pay Mrs. Kastein 50 cents per day for the use of the horses.  Joe Reinhardt, an employé of defendants, testified that he sold Pomeranz seven horses in February or March, 1907.  William Rothschild testified that he had sold Pomeranz only seven horses in two years; that the horses taken in this action were five of the lot of seven mentioned in the mortgage.  (As the mortgage was given in April, 1907, about the time the seven horses were sold to Pomeranz, how is it possible that five of those horses could be included in the bill of sale December, 1906.)  Witness saw Pomeranz after April, 1907, who told him he had better get these horses, which were in the Cherry Street stable, and they were taken by Mezger.  Seven hundred dollars was due on the mortgage at that time.  Pomeranz then told him that the horses belonged to Mrs. Kastein, and this action was begun.  Mrs. Kastein was recalled.  She said Pomeranz owed her $5,000, for which he gave the bill of sale.  She first gave him $800 three years previously— always gave him cash; never checks.  She had no bank account.  She took no receipts.  On December 16, 1906, she gave him $800 at her house, before the bill of sale was drawn.

The court charged the jury that a verdict for the plaintiff must depend upon change of possession under the bill of sale; also that the horses mentioned in the chattel mortgage could not have been mentioned in the bill of sale, and if the jury so found their verdict must be for the defendant.  Out of this mass of tangled testimony there arises the conviction that there was no change of possession under the bill of sale.  There is no reasonable certainty that Mrs. Kastein advanced $5,000 to Pomeranz, who clearly was in financial straits.  The most that can be said is that the bill of sale may have been intended

as security by way of mortgage. The probabilities are that the horses mentioned in the Rothschild mortgage were not sold to Pomeranz when the bill of sale was made, and therefore could not have been transferred to Mrs. Kastein. The verdict is against the evidence.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.